ORDERED in the Southern District of Florida on **JUL 17 2009**



_A. Jay Cristol, Chief Judge Emeritus_
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ALL STAR MORTGAGE FINANCIAL CORP.,　　　　Case No. 07-15984-BKC-AJC

　　Debtor.　　　　　　　　　　　　　　　　　　　Chapter 7
_____/
BARRY E. MUKAMAL, Chapter 7 Trustee,

　　Plaintiff,　　　　　　　　　　　　　　　　　　Adv. No. 08-01853-BKC-AJC

v.

LEYMI LIMA AND FRANCISCO HERNANDEZ,

　　Defendants.
_____/

### ORDER GRANTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' VERIFIED MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came on for hearing before the Court on May 18, 2009 at 10:00 a.m. upon Defendants' Motion for Summary Judgment (***"Defendants' Motion"***)[D.E. 12] and upon the Plaintiff's Cross-Motion for Summary Judgment and Incorporated Memorandum of Law (the

*"Trustee Motion"*) [D.E. 25]. The Court having reviewed the Trustee Motion, the Defendants' Motion and the Court file, having heard argument of counsel, and having considered the documentary evidence of record, the Trustee Motion is GRANTED and the Defendants' Motion is DENIED. Summary Judgment is entered in favor of the Trustee accordingly.

### Undisputed Facts

1. On July 31, 2007, All Star Mortgage Financial Corp. (*"All Star"*) filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code and an Order for Relief was duly entered.

2. Barry E. Mukamal (the **"Trustee and/or Plaintiff"**) is the duly appointed Chapter 7 Trustee in this case.

3. All Star was a mortgage brokerage business that performed direct lending services. More specifically, All Star had a warehouse line (the **"Warehouse Line"**) of credit from Gateway Bank which it used to fund loans to individuals that "qualified" under All Star's lending criteria.

4. Upon All Star funding/making a loan to a "qualified" individual from its Warehouse Line, All Star would then sell the loan documents to an institutional lender. Upon the sale of the loan documents to an institutional lender, All Star was supposed to use those monies to put back into its Warehouse Line.

5. Potential All Star borrowers included friends and business associates of All Star's principal, Steven Dubberly, and other employees of All Star.

### Mrs. Lima and Mr. Hernandez

6. Mrs. Lima and Mr. Hernandez are married.

7. On November 21, 2003, Frank Hernandez (*"Mr. Hernandez"*) entered into a Subscription Agreement with All Star (the **"Subscription Agreement"**). A copy of the Subscription

Agreement is attached as Exhibit "A" to the Trustee Motion.

8. Pursuant to the Subscription Agreement, Mr. Hernandez purchased 100 shares of All Star's Series A Preferred Stock for a price of $100,000 ($1,000 a share).

9. Paragraph 5 of the Subscription Agreement provides that the Subscription Agreement is non-transferable or assignable.

10. On February 14, 2004, Mr. Hernandez gifted to Leymi Lima (*"Ms. Lima"*)(collectively, Mr. Hernandez and Mrs. Lima will be referred to as the *"Defendants"*) his 100 shares of All Star's Series A Preferred Stock and assigned to her the Subscription Agreement.

11. In addition, on November 21, 2003, Mr. Hernandez, and not Ms. Lima, loaned All Star $120,000, which loan was evidenced by a promissory note, and mortgage (the *"Note and Mortgage"*) on All Star's parcel of real property located at 8830 Coral Way, Miami, FL 33165 (the *"Property"*) in the name of Mr. Hernandez only. Attached as Composite Exhibit "B" to the Trustee Motion are the Note and Mortgage.

12. The Note and Mortgage were never recorded in the public records of Miami-Dade County, Florida.

### The State Court Lawsuit

21. On June 1, 2007, Mrs. Lima sued All Star in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 06-06852 CA 22 (the *"State Court Action"*) for Breach of Contract and Impression of Lien. A copy of the complaint initiating the State Court Action is attached as Exhibit "C" to the Trustee Motion. Mr. Hernandez was not a party to the State Court Action.

22. In addition, Mrs. Lima recorded a Notice of Lis Pendens on March 30, 2007, in Official Records Book 25494, page 0404, of the Public Records of Miami-Dade County, Florida (the

*"Lis Pendens"*). A copy of the Lis Pendens is attached as Exhibit "D" to the Trustee Motion. Mr. Hernandez is not named, nor referenced, in the Lis Pendens.

23. Pursuant to the Breach of Contract count in the complaint filed by Mrs. Lima in the State Court Action, Mrs. Lima alleged that Mr. Hernandez performed the terms of the Subscription Agreement by tendering to All Star the $100,000 in exchange for the 100 shares of All Star's Series A Preferred Stock, but that All Star had breached the Subscription Agreement by failing to make the "payments of the preferred return...as required under the terms of the Subscription Agreement."

24. Pursuant to the Impression of Lien count in the complaint filed by Mrs. Lima in the State Court Action, Mrs. Lima alleged that All Star was allowing the Property to go into foreclosure. As a result, Mrs. Lima requested the entry of a judgment: appointing a receiver to sell the Property; establishing an equitable lien/contractual lien against the Property in the amount of the preferred return under the Subscription Agreement; and, directing that the value of her 100 shares of All Star's Series A Preferred Stock be distributed to her prior to any payments being made to the other equity holders of All Star.

24. Nowhere in the complaint in the State Court Action was there a mention of the Note and Mortgage. The complaint is based upon the Series A Preferred Stock in All Star.

### Sale of the Property by the Trustee

25. On December 5, 2007, the Trustee sold the Property pursuant to 11 U.S.C. §363. The net proceeds from the sale of the Coral Way Property are approximately $466,000 (the *"Sale Proceeds"*), which are currently being held by the Trustee.

26. Mrs. Lima and Mr. Hernandez have claimed an interest in the Sale Proceeds by virtue of the unrecorded Note and Mortgage.

27. On November 19, 2007, one day after the expiration of the deadline to file proofs of

claim, Mrs. Lima filed a secured proof of claim in the amount of $225,239.10 based on the unrecorded Note and Mortgage. *See* Proof of Claim 19 filed in All Star's main bankruptcy case.

28. On November 13, 2008, Mrs. Lima, together with Mr. Hernandez, filed an amended secured proof of claim in the amount of $212,313.25 (the *"Amended Claim"*) based on the unrecorded Note and Mortgage. *See* Proof of Claim 28 filed in All Star's main bankruptcy case.

29. Prior to the filing of the Amended Claim, Mr. Hernandez had not filed a proof of claim in the All Star bankruptcy case.

30. It is undisputed that, on the Petition Date, the Trustee was not aware that Mr. Hernandez was claiming an equitable lien on the Property by virtue of his unrecorded Note and Mortgage as neither was recorded in the public records of Miami-Dade County, Florida.

31. Mrs. Lima and Mr. Hernandez have communicated to the Trustee that they are asserting a secured claim in the amount of the unrecorded Note and Mortgage against the Sale Proceeds as a result of the filing of the Lis Pendens.

## Conclusions of Law

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K).

### A. Standard for Summary Judgment

Pursuant to Fed.R.Civ.P. 56, as incorporated by Fed.R.Bankr.P. 7056, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once the moving party identifies those portions of the record that demonstrate the absence of a genuine issue of material fact, any party opposing summary judgment must set forth specific facts showing a genuine issue for trial, and

may not rely on mere allegations or denials. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986); *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir. 1991). If the record as a whole could not lead a rational finder of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**B.     The Defendants Did Not Have an Equitable Lien on the Petition Date**

In the their Motion, the Defendants state that "to establish an equitable lien under Florida law, [a] mortgagee need only establish a contract with [the] debtors showing the intent to charge property with a debt or obligation, which the Defendants have done in this case." *See* Defendants' Motion at ¶ 12. In support of this statement, the Defendants cite *In re Diamond*, 196 B.R. 635 (Bankr. S.D.Fla 1996), wherein the Court determined that an equitable lien could be found "upon (1) a contract showing an intent to charge a particular property with a debt or an obligation or (2) a court may impose such a lien out of general considerations of right or justice." *Id.* at pg. 639; *see also Cohen v. State of New Jersey (In re Tsiolas)*, 236 B.R. 85, 88 (Bankr. M.D. Fla. 1999).

While the court in *Diamond* determined the foregoing to be an appropriate assessment of the law under the circumstances, the facts of this case do not warrant or compel such a result. *Diamond* does not stand for the proposition that a mortgage holder has an automatic equitable lien on real property when it fails to record a mortgage. Rather, *Diamond* involved a situation where First Union National Bank of Florida ("First Union") lent money to the debtors and in return First Union received a note and mortgage on the debtors' homestead property. *Id.* at 637-638. However, First Union lost the note and mortgage prior to recording the mortgage in the public records. *Id.* at 638. As a result, First Union filed an action in state court for reestablishment of the lost note and mortgage, which the debtors answered and admitted that they executed and delivered the note and mortgage to First Union. *Id.* In addition, First Union recorded a notice of lis pendens on the debtors'

property, which notice of lis pendens expressly stated that the state court action was an action for the reestablishment of the lost note and mortgage. *Id.* Thereafter, the debtors filed for Chapter 7 bankruptcy protection. *Id.*

During their Chapter 7 case, First Union commenced an adversary proceeding seeking to determine the validity, priority and extent of the lost note and mortgage on the debtors' property. *Id.* First Union sought the imposition of an equitable lien and further argued that the recording of the notice of lis pendens charged prospective purchasers "with constructive notice of the pendency of the litigation and such purchasers and encumbrances would take subject to the decree of the state court regarding First Union's alleged lien." *Id.* at 639. In response, the debtors asserted that any lien held by First Union was avoidable pursuant to 11 U.S.C. § 544 on the basis that a bankruptcy trustee has the power to avoid any unperfected lien, and that the notice of lis pendens only provided constructive notice of First Union's alleged lien which could be avoided by Section 544. *Id.* Finding that the debtors did have notice of First Union's alleged equitable lien, the Court ruled in favor of First Union. *Id.* at 641.

*Diamond* is unpersuasive for several reasons. First, in *Diamond* there was a contract showing an intent to charge a particular property with a debt or an obligation (ie. the note and mortgage). Second, the debtors in *Diamond* acknowledged that they knew of the existence of the note and mortgage on the petition date. Third, the notice of lis pendens in *Diamond* expressly referenced that the lawsuit pending in state court involved the reestablishment of a lost note and mortgage on the debtors' property. And fourth, it is common knowledge that First Union was a bank in the business of making loans.

In the instant case, on the Petition Date, the Trustee did not know of the existence of the Note and Mortgage as neither was recorded in the public records. Second, Mrs. Lima's State Court

Action was not predicated on a contract showing an intent to charge a particular property with a debt or an obligation - rather, the State Court Action involved the breach of a subscription agreement and the request for the imposition of an equitable lien based on such breach, not on a contract showing an intent to charge the Property with a debt or obligation. The Lis Pendens recorded by Mrs. Lima did not describe, or even reference, the Note, Mortgage, or claim for an equitable lien. In addition, the Lis Pendens did not mention Mr. Hernandez - the holder of the unrecorded Note and Mortgage. And, the Defendants were not a bank, such as First Union. Clearly, the *Diamond* case is inapplicable to the instant case.

The Defendants also rely on *In re Gunn*, 2005 WL 2445909 (Bankr. S.D. Fla. Jan. 12, 2005) to support their position, but the Court finds *Gunn* to be equally unpersuasive as the facts in *Gunn* are distinguishable from the facts in the instant case. In *Gunn*, the Chapter 7 trustee attempted to avoid the conveyance of a parcel of property as a result of a defect in the deed conveying the property. The Court found that based on the documents recorded in the public records (including a mortgage, the defective deed, and a lis pendens referring to the mortgage), the Chapter 7 trustee was on notice of the interest of a third party in such property, even though the deed was defective, and therefore the Chapter 7 trustee could not avoid the conveyance of the property. The facts, and equities, apparent in *Gunn* are just not present in this case, and the Court finds *Gunn* inapplicable herein.

The relief Defendants request is not consistent with the policies of the Bankruptcy Code. As Judge Paskay stated in *In re G & R Builders, Inc.* 123 B.R. 654, 660 (Bankr. M.D.Fla. 1990)(citations omitted), "[t]he recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section." In the instant case, the Defendants had almost four years to record the Note and Mortgage but simply

failed, or refused, to do so. This Court finds that the Defendants do not have an equitable lien on the Sale Proceeds.

### C. The Trustee is a Bona Fide Purchaser or Creditor Without Notice

The Defendants argue that the Lis Pendens provided the Trustee with both constructive and/or inquiry notice of Mr. Hernandez's unrecorded Note and Mortgage, and therefore, the Trustee was not a bonafide purchaser or creditor without notice for purposes of 11 U.S.C. § 544. Pursuant to 11 U.S.C. § 544, the Trustee may avoid any transfer of All Star's property or any obligation that All Star incurred that is voidable by a bonafide purchaser or a creditor without notice. Under Florida law, the Trustee here is a bonafide purchaser or creditor without notice, since the Trustee had neither actual, constructive, or inquiry notice of the Note and Mortgage. *See In re Gunn*, 2005 WL 2445909 (Bankr. S.D. Fla. Jan. 12, 2005).

Here, it is material that the Note and Mortgage were in the name of Mr. Hernandez only. However, the State Court Action and Lis Pendens were in the name of Mrs. Lima only. For purposes of reviewing the public records, the Trustee was on notice (via the Lis Pendens) that Mrs. Lima was claiming an equitable lien on the Property as a result of the All Star's alleged breach of the Subscription Agreement. However, the Trustee could not have been on notice of Mr. Hernandez's Note and Mortgage because such Note and Mortgage were never recorded nor did the Lis Pendens describe the Note and Mortgage or mention Mr. Hernandez's name. A search of the public records would not have revealed the existence of the unrecorded Note and Mortgage, nor would it have led the Trustee to inquire whether Francisco Hernandez had any type of interest in the Property. *See e.g. In re CJW, Ltd., Inc.*, 172 B.R. 675, 685 (Bankr. M.D.Fla. 1994).

It is undisputed that the Trustee did not have constructive notice of the Note and Mortgage because neither was recorded in the public records, and the notice of Lis Pendens only referenced

the State Court Action in the name of Mrs. Lima, which lawsuit also failed to claim the existence of the Note and Mortgage. *In re Gunn,* 2005 WL 2445909 at pg. 4 (noting that constructive notice "is notice of all claims which are revealed by the public records").

Moreover, the Trustee did not have inquiry notice, also known as implied actual notice, of the Note and Mortgage. Inquiry notice is "notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use." *Id.* at pg. 5 (internal quotations omitted). There are two requirements for the duty of inquiry to presumptively arise: (1) "the circumstances must be such as should reasonably suggest inquiry;" and, (2) "even if the circumstances suggest inquiry, if the search, even though not conducted, was certain to be futile, the presumption of the duty to inquire is rebutted, and no notice should be imputed." *See Smith v. The Fed. Deposit Ins. Corp.*, 61 F.3d 1552, 1558 (11th Cir. 1995). Inquiry notice prevents a person from remaining "wilfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." *See Crown Gen. Stores, Inc. v. Ultra Meat Market, Inc.,* 843 So. 2d 287, 289 (internal quotations omitted).

The Defendants misunderstand the significance of the filing Lis Pendens since they erroneously argue that the Lis Pendens provides the Trustee with both constructive or inquiry notice of the unrecorded Note and Mortgage. Under Florida law, a lis pendens does not extend beyond the prayer for relief, as it is notice of all facts *apparent on the face of the pleadings* and such other facts in the pleadings which would necessarily provide the purchaser inquiry notice. *See Marchand v. De Soto Mortgage Co.,* 149 So. 2d 357 (Fla. 2d DCA 1963). Because the Lis Pendens at issue herein references the State Court Action which fails to state in its pleadings the existence of the Note and Mortgage, or the name of Mr. Hernandez, the Trustee cannot be charged with inquiry notice of Defendants' asserted equitable lien based upon Mr. Hernandez's unrecorded Note and Mortgage.

Unlike *Diamond* or *Gunn*, neither the Lis Pendens nor State Court Action referenced the Note and Mortgage, or Mr. Hernandez, in a way that would lead the Trustee to inquire as to the possible existence of the unrecorded Note and Mortgage. Accordingly, the Trustee could not be charged with notice of the unrecorded Note and Mortgage.

D.  **The Trustee, as a Bonafide Purchaser or Creditor Without Notice, has a Hypothetical Lien Perfected as of the Bankruptcy Petition Date, Thereby Allowing the Trustee to Avoid, Pursuant to the Trustee's Strong-Arm Powers, Defendants' Unperfected Lien**

The Court having determined that the Trustee is a bonafide purchaser or creditor without notice, the Trustee has a hypothetical lien, perfected as of the bankruptcy petition date, pursuant to 11 U.S.C. § 544. *See Trodglen v. Hastings (In re Trodglen)*, 155 B.R. 601 (Bankr. S.D. Fla. 1993); *First Am. Bank & Trust Co. of Athens, Ga. v. Harris (Matter of Stewart)*, 74 B.R. 350 (Bankr. M.D.Ga. 1987). The Defendants failed to perfect their lien, as evidenced by their unrecorded Note and Mortgage, as of the bankruptcy petition date. Thus, the Trustee's perfected hypothetical lien is superior to the Defendants' unperfected interest. *See Trodglen*, 155 B.R. at 601 (creditors' unperfected lien could be avoided by trustee pursuant to strong-arm powers in 11 U.S.C. § 544); *Stewart*, 74 B.R. at 350 (Chapter 7 trustee, as a hypothetical lien creditor, has priority over creditor's unperfected security interest).

Under Florida law, the right of a subsequent valid lienholder without notice is superior to the right of a holder of an equitable lien. *Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.)*, 828 F.2d 699, 706 (11th Cir. 1987). An equitable lien is superior to all persons *except* bona fide purchasers or subsequent valid lienholders, without notice. *Gen. Coffee Corp.*, 828 F.2d at 706. *See also Cohen v. State of New Jersey (In re Tsiolas)*, 236 B.R. 85 (Bankr. M.D. Fla. 1999). Here, the Trustee was never on notice of the unrecorded Note and Mortgage, nor could the Lis Pendens have placed the Trustee on notice of the unrecorded Note and Mortgage being that the Lis Pendens

did not reference the unrecorded Note and Mortgage or Mr. Hernandez.

In further support of their argument, the Defendants cite § 695.01, Fla. Stat. (2008) for the proposition that on the date Ms. Lima "recorded her notice of Lis Pendens the equitable lien became effective against subsequent creditors." *See* Defendants' Motion at ¶ 16. However, on the date Ms. Lima recorded her Lis Pendens she merely had a claim to an equitable lien for breach of a subscription agreement, not an entitlement to an equitable lien as she suggests. Specifically, § 695.01, Fla. Stat. (2008), provides in pertinent part:

> (1) No conveyance, transfer, or mortgage of real property, or of any interest therein . . . shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law . . . ."

Here, the Defendants' alleged equitable lien is not good against the Trustee as a creditor or subsequent bonafide purchaser because Mrs. Lima failed to record her yet-to-exist equitable lien, or Mr. Hernandez's unrecorded Note and Mortgage, and Defendants' lawsuit merely *claims* an equitable lien. Defendants had not received a judgment entitling them to an equitable lien at the time of the bankruptcy petition. *See In re Mabbott*, 255 B.R. 787 (Bankr. M.D. Fla. 2000) (unperfected equitable interest is subordinate to the interest of a judicial lien creditor under Florida law).

The Trustee is a bonafide purchaser or a subsequent lienholder, without notice, and thus, the Trustee's claim to the Sale Proceeds is superior to Defendants' asserted equitable lien. Accordingly, the Trustee, as a perfected hypothetical lienholder, can avoid Defendants' purported equitable lien pursuant to the strong-arm powers of 11 U.S.C. § 544.

As there is no genuine issue as to any material facts, it is

**ORDERED AND ADJUDGED** that the Trustee's Motion is **GRANTED** and Defendants' Motion is **DENIED**.

###

**Copies furnished to:**
Daniel N. Gonzalez, Esquire
Florida Bar No. 0592749
dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
Counsel for Debtor in Possession
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:	(305) 358-6363
Telefax:	(305) 358-1221

Daniel N. Gonzalez, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service